**KNIGHT LAW GROUP LLP**
Steve B. Mikhov (SBN 224676)
Russell Higgins (SBN 226124)
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 552-2250
Facsimile: (310) 552-7973

Attorneys for Plaintiffs,
GLORIA LAWRENCE,

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GLORIA LAWRENCE**, | Case No.:  2:16-cv-05452-MRW |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION *IN LIMINE* TO EXCLUDE OR LIMIT THE OPINIONS AND TESTIMONY OF FCA'S WITNESS, JAMES BIELENDA; DECLARATION OF RUSSELL HIGGINS** |
| vs. | |
| **FCA US LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,** | *Assigned for All Purposes to the Honorable Magistrate Judge Michael R. Wilner* |
| Defendant. | Hearing Date: April 25, 2018 Hearing Time: 9:30am |
| | Action Filed: September 26, 2016 |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 25, 2018 at 9:30 a.m., Plaintiff Gloria Lawrence ("Plaintiffs"), move the Court *in limine* for an order to exclude the opinions and testimony of Defendant FCA UC LLC's witness, James Bielenda, based upon lack of proper foundation, lack of prior disclosure as a witness in this action, lack of designation or compliance with the legal requirements for testimony as an expert witness, and the purely speculative and hearsay nature of the opinions and testimony to be offered by the witness. Alternatively, Plaintiffs move to limit the opinions and testimony of Mr. Bielenda to include only non-speculative, percipient, and non-hearsay testimony, if any, for which proper foundation can be demonstrated.

Plaintiffs further move the Court to instruct all parties and their counsel, as well as require counsel to advise all witnesses of the following:

1.  Not to attempt to convey to the jury, directly or indirectly, any of the facts mentioned in this Motion without first obtaining permission from the Court outside the presence and hearing of the jury;

2.  Not to make any reference to the fact that this Motion has been filed; and,

3.  To warn and caution all witnesses to strictly follow the same instructions.

///
///

PLAINTIFF'S MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

1
2
3
4       This motion is based upon the supporting Memorandum of Points and
5   Authorities, the Declaration of Russell Higgins attached hereto, the papers and
6   pleadings on file in this action, and upon such further matters that may be presented
7   at the hearing.
8
9
10  Dated: April 3, 2018                    **KNIGHT LAW GROUP, LLP**
11
12                                          /s/ Steven Mikhov
13                                          Steve Mikhov (SBN 224676)
14                                          Russell Higgins (SBN 226124)
15                                          *Attorneys for Plaintiffs,*
                                            GLORIA LAWRENCE
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.   INTRODUCTION ............................................................................................. 1

II.  STATEMENT OF FACTS……………………………………………………3

III. ARGUMENT .................................................................................................... 6

    A.   FCA Cannot Present Mr. Bielenda as an Expert, as He Was Not   Designated  ...................................... 6

    B.   Plaintiffs Would Suffer Severe Prejudice by the Introduction of Expert Opinion by Mr. Bielenda, as a Witness Not Designated as an Expert ................... 9

    C.   Expert Testimony and Opinion Which Is Devoid of Any Objective Scientific Inquiry and Methodology Lacks Foundation and Must Be Excluded.................. 10

    D.   Mr. Bielenda's Opinions Are Likely To Cause Undue Prejudice and Likely to Confuse and Mislead the Jury ......................................................................... 11

    E.   Mr. Bielenda's Testimony and Opinions Consists Largely of Inadmissible Hearsay ............................................................................................... 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Cabrera v. Cordis Corp.,* 134 F.3d 1418 (9th Cir.1998)............................... 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) ......... 10, 11,12

*Diviero v. Uniroyal Goodrich Tire Co.,* 114 F.3d 851 (9th Cir.1997) ....................... 9

*Junro America Inc. v. Secure Investments, Inc.* 266 F.3d 993 (2001) …………….12

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)......................................................................................................11,12

*Murray v. Southern Route Maritime SA*, 870 F.3d 915 (2017) ................................ 10

*U.S. v. Sandoval–Mendoza*, 472 F.3d 645 (2006) ...................................... 11

**Statutes**

Federal Rule of Civil Procedure 26…… ................................................ 8

Federal Rule of Civil Procedure 26(a)…… ........................................... 8

Federal Rule of Civil Procedure 26(a)(1)(E) ........................................ 7

Federal Rule of Civil Procedure 26(a)(2) ............................................ 7

Federal Rule of Civil Procedure 26(a)(2)(A)...................................... 6,7

Federal Rule of Civil Procedure 26(a)(2)(B) ....................................... 7

Federal Rule of Civil Procedure 26(a)(2)(E) ....................................... 7

Federal Rule of Civil Procedure 37 .................................................... 8

Federal Rule of Civil Procedure 37(c)(1) ............................................ 8


Federal Rule of Evidence, Rule 701 .................................................. 12

Federal Rule of Evidence, Rule 702 ................................................. 9, 10

Federal Rule of Evidence, Rule 703 .................................................. 11

Federal Rule of Evidence, Rule 705 .................................................. 10

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

   This action involves Plaintiff Gloria Lawrence ("Plaintiffs") claims against Defendant FCA US LLC ("Defendant" or "FCA") arising under the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Civ. Code, § 1790 et seq. and claims against FCA for common law fraud, in concealing known defects with the Totally Integrated Power Module ("TIPM") in Plaintiffs' vehicle. The TIPM module is contained within a sealed plastic box about the size of a toaster, located in the vehicle's engine compartment near the battery. It consists of several printed circuit boards (containing a variety of software and electrical connections), several electromechanical relays (including, without limitation, a relay for the fuel pump), fuses, and a variety of related circuits and connectors and components. The TIPM's circuitry and software serve as a power routing center for some systems, an electronic control for many other systems, and is involved directly or indirectly in controlling or facilitating the operation of most electrically operated parts of the vehicle. Plaintiffs blame many of their vehicle's problems on a faulty TIPM, and assert that FCA knew the TIPM was faulty before the vehicle was sold to them but concealed that information during the sale and subsequent repairs. FCA claims the only problem anyone ever found with the TIPM was a faulty fuel pump relay, the subject of a nationwide recall forced by NHTSA.

   Defendant FCA proposes to offer at trial the testimony of James Bielenda, an FCA employee. Mr. Bielenda has never been designated by FCA as an expert in this action or any similar California case prosecuted by Plaintiffs' counsel. In fact, according to FCA's own trial counsel, he is "not an expert witness," but rather a "percipient witness." (Declaration of Russell Higgins ("Higgins Decl."), ¶ 5, Exh. C at 216:12-15.) But according to FCA's trial counsel, "he's an engineer in Auburn Hills who knows about the TIPM." (*Ibid*.) So although FCA overtly refuses to designate Mr. Bielenda as an expert, nonetheless it is clear that expert testimony is

PLAINTIFF'S MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

being proffered by FCA. At the end of the day, he is neither a percipient witness, nor an admissible expert.

Mr. Bielenda worked as an electrical engineer for FCA for decades, but now (and at all times relevant here) works as the Manager of Product Investigations within the Electrical Engineering Department at FCA US LLC. Mr. Bielenda was not involved in any part of the development or pre-launch testing of the TIPM, nor in any analysis of the TIPM installed in Plaintiffs' specific vehicle. Indeed, he has only a scintilla of firsthand exposure to any testing related to TIPM modules of any kind. Mr. Bielenda has never seen Plaintiffs' individual vehicle (or if so, this has never been disclosed), so Mr. Bielenda is not a "percipient witness" as to the Plaintiffs' vehicle or its problems.

Nor does Mr. Bielenda have his own "percipient knowledge" (if there is such a thing, outside of expert conclusions) about how the TIPM functions or fails to function. All of his information about these subjects is based on what he has read in manuals or heard from others within the company, which he cannot present as it is hearsay. Beyond that, Mr. Bielenda is only a "percipient witness" to meetings about FCA's investigation into TIPM failures, which is what he really proposes to testify about here – and even then, only to some extent. When presented for deposition, Mr. Bielenda was repeatedly directed not to answer questions based on specious claims of "corporate privilege" so FCA is clearly concealing some of Mr. Bielenda's knowledge from Plaintiffs and the Court. As to the rest of his deposition, virtually 100% of his testimony consisted of relaying the statements, conclusions, and findings of *other FCA employees* that he heard or read reports or saw presentations about, or otherwise became aware of.

Finally, Mr. Bielenda's "firsthand experience" in TIPM testing consists only of setting up a makeshift "testing bench" as a model to be used by FCA (and by its subcontractor, Continental) to select particular TIPM units for further testing or to workshop various tests they might want to run on particular TIPM units or vehicles

equipped with it. There are no reproducible or scientifically sound results from Mr. Bielenda's "tests," so any testimony about that process fails to satisfy the standards set forth by *Daubert*.

Ultimately, virtually all testimony this witness may provide lacks proper evidentiary foundation, consists largely of hearsay disguised as "expert testimony" from a witness not submitted for examination as a real expert, whose lay opinions are inadmissible. To allow his testimony into this trial would reward FCA for engaging in a bad-faith "shell game" of discovery violations. For these reasons, Mr. Bielenda's proposed testimony should be excluded in its entirety.

## II.   STATEMENT OF FACTS

On December 22, 2018, Defendant served a Notice of Taking Deposition of James Bielenda in this case and **approximately 73 others**. (Higgins Decl. ¶ 4, Exh. B; *see also* (Higgins Decl. ¶ 9, Exh. F at 9:15-16.) Mr. Bielenda was not identified as a potential witness in any of Defendant's sworn discovery responses. (Higgins Decl. ¶ 4.)

Mr. Bielenda was not designated as an expert witness in this action, and has never been designated as an expert witness in any of the several-hundred similar actions prosecuted by Plaintiffs' counsel and co-counsel against FCA. (Higgins Decl. ¶ 6.) In fact, Defendant had identified other individuals as potential expert witnesses in this matter. (Higgins Decl. ¶ 3, Exh. A.) Defendant has previously sought to introduce Mr. Bielenda as a trial witness in a separate case; the Court in that case recognized the danger of allowing Mr. Bielenda to provide unfettered testimony, especially as to matters for which he was not designated as an expert and had no percipient knowledge, and thus severely limited his testimony after a 402 hearing. (Higgins Decl. ¶¶ 7-8, Exh. E.)

Plaintiffs' counsel has obtained testimony from Mr. Bielenda on a handful of occasions. First, in September 2017, Mr. Bielenda gave a single day of deposition testimony in the matter of *Celie C. Weston v. FCA US, LLC*. (Higgins Decl. ¶ 5) His

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

testimony consisted primarily of his background and an overview of the investigation conducted by FCA into defects involving the TIPM module. During that deposition, Mr. Bielenda showed he was unfamiliar with most of the persons actually involved in the investigation as it developed in real time; his involvement with the investigation largely commenced after the launch of an investigation by NHTSA. His involvement with the investigation was neither direct nor supervisory, and consisted of little more than attending conference calls about the progress of the investigation. (Higgins Decl. ¶ 5, Exh. C at 100:23-101:15.)

**Mr. Bielenda's Hearsay Testimony**

Mr. Bielenda has never inspected the Plaintiffs' vehicle. Mr. Bielenda's testimony seeks to offer opinions as to the workings of the TIPM module and internal investigations as to its performance; however, it is abundantly clear from the record that Mr. Bielenda has little first-hand knowledge of the facts on which he purports to offer testimony. For example, Mr. Bielenda offers testimony on how the TIPM works and what it does, yet derives this information from a review of schematics and tests conducted by others. (Higgins Decl. ¶ 9, Exh. F at 20:2-21:23; 22:6-17; 28:6-29:14; *see also, for example* Higgins Decl. ¶ 7-8, Exh. E at 1025:3-9.) Mr. Bielenda offers testimony on what prompted FCA to investigate issues with the TIPM module's fuel pump relay, as well as testimony on the actual testing FCA did to investigate the issues, but plainly receives information secondhand from other teams and departments at FCA. (Higgins Decl. ¶ 9, Exh. F at 50:6-54:7)

As Mr. Bielenda admitted, he was only part of a team which performed tests, and that he was not personally present for or involved in every test of the TIPM-7 that the testing team did.  (*See inter alia*, Higgins Decl. ¶ 9, Exh. F at 16:9-21.). Often he would only review reports made after the fact. (*See inter alia*, Higgins Decl. ¶ 9, Exh. F at 16:25-17:3; *see also, for example*, Higgins Decl. ¶ 7-8, Exh. E at 1022:21-1023:15 ("I sent out components to be analyzed and read the reports back from third party experts.").). In addition to Mr. Bielenda's testimony being

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

unmitigated hearsay, a close review of Mr. Bielenda's testimony reveals that much of what he testified lacked evidentiary foundation.

### Mr. Bielenda's Testimony About "TIPM Tests"

In an attempt to prove that FCA has failed to identify any "defect" with the TIPM module (apart from the frequent failure of the fuel pump relay contained in the module), Mr. Bielenda has described some "testing" in which he personally participated. He has failed to articulate which parts of what "tests" he personally performed as opposed to those he heard or watched others perform, and the "tests" he described having personally set up cannot pass the necessary level of scientific reliability for admission of any of the results in this action (even ignoring that FCA has failed to produce any actual notes or other evidence those tests ever took place, or of their results).

Mr. Bielenda described participating in bench testing, plywood buck testing, field testing, "bicycle model" testing, durability testing, and final testing at the proving grounds. However, when pressed, Mr. Bielenda testified that his direct involvement, in the context of the TIPM module investigation, was limited to bench testing, and even then, "originally, just to set up the test. And once the test would go, then – then I – you know, **I didn't have to be there. We would make a decision in the meeting, okay, we got new relays we're going to test. Those guys that had the relays would take it down to the lab. Obviously I didn't need to be there.**" (Higgins Decl. ¶ 9, Exh. F at 56:10-16.) When further pressed, Mr. Bielenda testified that he only personally conducted testing on the TIPM two or three times. (Higgins Decl. ¶ 9, Exh. F at 210:17-20.) He has testified that he was not the individual responsible for the direction of the TIPM module testing, and was really only there to "monitor" the status of the testing. (Higgins Decl. ¶ 9, Exh. F at 220:17-223:8.) Mr. Bielenda offers conclusions on the role that the conformal coating on the TIPM module played in the failure of fuel pump relays, but really only provides his own interpretation of reports and data prepared by other people and other organizations.

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

1
2
3
4

(Higgins Decl. ¶ 9, Exh. F at 68:5-74:24; 75:19-77:20; *see also* Higgins Decl. ¶ 5, Exh. C 100:23-101:15.) Put simply, Mr. Bielenda's testimony is a mixed bag of indistinguishable perception and hearsay, and not clearly based on matters within his limited percipient foundation.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

Ultimately, Mr. Bielenda is being brought here solely to testify – under the cloak of "expertise" that his history supports – to the purported results of tests conducted by others within the company and its contractors, to the statements and findings made by other people participating in meetings with him, and to his creation (or oversight? or merely use?) of an ad-hoc makeshift "testing bench" he claims to have used for a limited purpose, the results of which have been neither published, disclosed in discovery, or reproduced insofar as anyone is aware. His testimony is wholly secondhand and even at that, Plaintiffs' counsel has been unable to drill into some of his own conclusions due to specious "corporate privacy/privilege" objections and instructions from FCA's counsel. (Higgins Decl. ¶ 10-11.) Mr. Bielenda admits time and again that he does not have any percipient knowledge of why the specific components failed, he has not been designated as an expert to even reach or opine about any conclusions beyond his percipient knowledge, and he does not have enough information – at least, not that he is allowed to testify about – to support any conclusion that he plans to offer. This type of testimony is insufficient to support his opinions.

21

## III.  ARGUMENT

22
23

### A.  FCA Cannot Present Mr. Bielenda as an Expert, as He Was Not Designated

24
25
26
27
28

No party should be permitted to present an expert who has not been designated. To allow parties to prepare for trial, Federal Rule of Civil Procedure section 26(a)(2)(A) requires a simultaneous exchange of information concerning each party's expert trial witnesses. Here, FCA failed to designate Mr. Bielenda as an expert. (Higgins Decl. ¶ 3, Exh. A.) Therefore, FCA should be precluded from

offering into evidence the oral or deposition testimony of any such non-designated expert witness.

Introduction of testimony in the form of expert opinion by a witness who has not been disclosed by FCA would be extremely prejudicial to Plaintiffs. Plaintiffs have a right to rely on Defendant's Designation of Expert Witnesses for the purpose of trial preparation and pre-trial discovery. Federal Rule of Civil Procedure section 26(a)(2) is designed to safeguard against such surprise.

Federal Rule of Civil Procedure 26(a)(2) details the requirement of expert disclosures. First, subdivision (A) requires a party to disclose to the other parties the identity of any witnesses it may use at a trial to present evidence under Federal Rule of Evidence 702, 703, or 705. Second, subdivision (B) explains that:

> … this disclosure must be accompanied by a written report— prepared and signed by the witness— if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and, (vi) a statement of the compensation to be paid for the study and testimony in the case.

The above-described information to be listed would relate to any person whose expert opinion is expected to be offered into evidence.

Federal Rule of Civil Procedure 26(a)(1)(E) states that a party "must make its initial disclosures based on the information then reasonably available to it," and "[a party] is not excused from making its initial disclosures because it has not fully investigated the case or because it challenges the sufficiency of another party's disclosures or because another party has not made its disclosures." Additionally, Federal Rule of Civil Procedure 26(a)(2)(E) imposes a continuous duty on the

parties to supplement their disclosures when required. Finally, Federal Rule of Civil Procedure 37(c)(1) explains "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Thus, the Federal Rules of Civil Procedure 26 and 37 mandate that FCA be precluded at the time of trial from attempting to introduce into evidence any expert witness opinion of any non-designated expert witness. Based on the foregoing, Plaintiffs respectfully request an order that FCA not attempt to introduce any such testimony at time of trial.

This issue becomes important if and when FCA attempts to include as a witness one or more of FCA's employees or authorized agents, such as repair technicians at FCA's authorized dealership. Plaintiffs do not seek to prevent the testimony of employees or agents, but would rather welcome the opportunity to cross-examine them in the context of a jury trial. Plaintiffs only seek to prevent employees from testifying as to matters that are within the province of a designated expert, and one must *qualify* as an expert.

FCA is permitted by the Federal Rules of Evidence to take testimony of lay witnesses as to matters those witnesses are competent to testify about, e.g. a lay witness may testify to matters rationally based on the witness' perception; helpful to clearly understanding the witness's testimony or to determining a fact in issue; and, not based on scientific, technical or other specialized knowledge. FCA is not permitted to introduce testimony from lay witnesses that is reserved for experts by the Federal Rules of Evidence when those witnesses have not been designated as experts. This is a well-settled principle of law.

///

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

1

2

3

**B. <u>Plaintiffs Would Suffer Severe Prejudice by the Introduction of Expert Opinion by Mr. Bielenda, as a Witness Not Designated as an Expert</u>**

Plaintiffs have prepared for trial with justified belief that FCA has designated the expert it intends to introduce at trial. Accordingly, Plaintiffs would be prejudiced by surprise if FCA were permitted to introduce an expert to give expert opinion on matters that Plaintiffs have not had the opportunity to discover prior to trial. The intent of the Discovery Act is to prevent such surprise on another party. Accordingly, expert opinion by an undesignated expert should be excluded.

Mere knowledge of a subject is not enough to qualify someone as an expert. A motion in limine may be granted where it is shown through pre-trial discovery that the purported expert witnesses' opinion is based on assumptions unsupported by any evidence. In *Cabrera v. Cordis Corp.,* 134 F.3d 1418, 1423 (9th Cir.1998) the court held that "[a]n opinion based on such unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702. *See Diviero v. Uniroyal Goodrich Tire Co.,* 114 F.3d 851, 853 (9th Cir.1997) ("Rule 702 demands that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs.")

///

///

C. <u>**Expert Testimony and Opinion Which Is Devoid of Any Objective Scientific Inquiry and Methodology Lacks Foundation and Must Be Excluded**</u>

Federal Rules of Evidence, Rule 702 explains that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact  to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and,
(d) the expert has reliably applied the principles and methods to the facts of the case.

Further, Federal Rules of Evidence, Rule 705 provides that, "[u]nless the court orders otherwise, an expert may state an opinion — and give the reasons for it — without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-examination."

The Federal Rules of Evidence vest district judges with ample discretion to test an expert's reliability. (*Murray v. Southern Route Maritime SA*, 870 F.3d 915, 923 (2017)). In *Murray,* the Court found that district judges effectively serve as gatekeepers examining "the full picture of the experts' methodology and preventing shoddy expert testimony and junk science from reaching the jury". *(Id. At 923).* See also, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 at 595–97, 113 S.Ct. 2786 (1993). On a challenge to the admissibility of an expert opinion,

pursuant to Federal Rules of Evidence, Rule 702 the Court should consider, *inter alia*:

> • Whether the theory can be and has been tested;

> • Whether the theory has been subject to peer review and publication;

> • What the theory's known or potential error rate is; and,

> • Whether the theory enjoys general acceptance in the applicable scientific community.

Id. at 591.

In *U.S. v. Sandoval–Mendoza*, 472 F.3d at 654 (2006), the court found that "[e]xpert opinion testimony is relevant if the knowledge underlying it has a 'valid connection to the pertinent inquiry'. And it is reliable if the knowledge underlying it has a 'reliable basis in the knowledge and experience of the relevant discipline.'" (quoting, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 143 L.Ed.2d 238  (1999) (quoting *Daubert*, 509 U.S. 579, 592, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993))).

Here, Mr. Bielenda cannot and should not be allowed to testify that there was "no problem with the TIPM other than the fuel pump relay" when FCA's own document production heavily demonstrates that there were a litany of problems with the TIPM module, just no others that resulted in a nationwide recall. He admits that he has never worked on the design, development, or failure analysis of any TIPM related component – apart from his tangential "involvement" in FCA's investigation of the relay issue leading to the nationwide recall – therefore he simply has no information on which to base that. Opinions without evidence are inadmissible and patently unfair.

### D. Mr. Bielenda's Opinions Are Likely To Cause Undue Prejudice and Likely to Confuse and Mislead the Jury

Finally, the Court retains discretion to exclude expert opinions where, because of the information relied on in forming the opinion, its probative value is outweighed

by the risk the jury might improperly consider it as independent proof. (Federal Rules of Evidence, Rule 703). It is prejudicial for an expert to get up on the stand and say, "*my opinion is X, Y and Z*," when he has done nothing remotely consistent with what other experts in the field would do to create a foundation upon which to rest that opinion.

In this case, Mr. Bielenda should not be allowed to testify that "the only defect in the TIPM module was the fuel pump relay" or that TIPM defects were "not the cause" of any problems in the Plaintiffs' vehicle. Such opinions are irrelevant and/or more prejudicial than probative. They would also likely result in the consumption of undue time, unfair prejudice and confusion of the issues for the jury.

## E. **Mr. Bielenda's Testimony and Opinions Consists Largely of Inadmissible Hearsay**

As stated above, Mr. Bielenda's testimony is replete with hearsay statements, and should be excluded on that basis alone. As a purported percipient witness, Mr. Bielenda may only present testimony based on his own firsthand knowledge. (Federal Rules of Evidence, Rule 701; *see Junro America Inc. v. Secure Investments, Inc.* 266 F.3d 993 (2001)) ("An expert witness—unlike other witnesses—"is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation," so long as the "expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786 (1993); *Kumho,*526 U.S. at 148, 119 S.Ct. 1167 (1999).") As discussed above, Mr. Bielenda is not an expert witness, and may not relate hearsay statements in his testimony. The testimony offered by Mr. Bielenda is derived not from his personal experience or involvement, but from review of documents and consultations with third parties, and largely consists of attempts to simply repeat that information to the Court. To the extent that Mr. Bielenda offers testimony to prove the truth of out-of-court statements made by others (e.g. "teams" Mr. Bielenda was a part of) or to the content of documents, his testimony must be

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

excluded under the Hearsay Rule.

///

///

## IV.   **<u>CONCLUSION</u>**

Accordingly, this motion *in limine* should be granted, and FCA should be ordered not to introduce evidence in the form of an expert opinion by a witness who has not been designated.

Dated: April 3, 2018                          **KNIGHT LAW GROUP, LLP**


                                              /s/ Steve Mikhov
                                              Steve Mikhov (SBN 224676)
                                              Russell Higgins (SBN 226124)
                                              *Attorneys for Plaintiffs,*
                                              GLORIA LAWRENCE

13

### DECLARATION OF RUSSELL HIGGINS

I, Russell Higgins, declare as follows:

1.      I am an attorney licensed to practice law in the State of California. I am an Associate at Knight Law Group, LLP, and we are counsel for Plaintiff Gloria Lawrence ("Plaintiffs") in the above-captioned matter.

2.      I have personal knowledge of the following facts and if sworn as a witness, I could and would testify to them competently.

3.      A true and correct copy of Defendant's Designation of Expert Witness is attached hereto as **Exhibit A**.

4.      On December 22, 2018, Defendant served a Notice of Taking Deposition of James Bielenda in this case and approximately 73 others. A true and correct copy of Defendant's Notice of Taking Deposition of James Bielenda is attached hereto as **Exhibit B**.

5.      I am aware of three occasions taken the deposition of James Bielenda, who was produced by Defendant to testify concerning the Totally Integrated Power Module (TIPM) installed in various Jeep, Dodge, and Chrysler vehicles. I first took his deposition in the matter of *Celie Weston v. FCA US LLC*, Los Angeles County, Case No. BC625784, on September 18, 2017. A true and correct copy of an excerpt from the transcript of that deposition is attached hereto as **Exhibit C**. I later took a more extensive deposition of Mr. Bielenda on January 8 – 9, 2018, which had been noticed in several hundred actions including the above-captioned. In addition to the depositions referenced above, I am aware that Mr. Bielenda also testified in the trial of one action, *Phillip J. Smith et al. v. FCA US LLC*, Riverside County Case No. RIC 1608462.

6.      Mr. Bielenda has not been designated as an "expert" in any action prosecuted by my law firm against FCA, or in any other action of which I am counsel. FCA has also not presented Mr. Bielenda as a "person most

knowledgeable" or "person most qualified" in any action prosecuted by my firm. Mr. Bielenda is presented solely as a "percipient witness." For example, in connection with the *Smith v. FCA* action referenced above, FCA introduced Mr. Bielenda mid-trial as an "impeachment" witness, having never listed him previously as a witness in the action. When this was first brought up by FCA's counsel (Scott S. Shepardson of Nixon Peabody) on October 26, 2017, in the middle of the trial, Mr. Shepardson described him to the Court and to the plaintiffs' counsel as "a witness named Jim Bielenda, who's not an expert witness. He's a percipient witness. He's an engineer in Auburn Hills, who knows about the TIPM." Attached as **Exhibit D** is a true and correct copy of the relevant excerpt from the Reporter's Transcript of Trial Proceedings in Smith v. FCA US LLC, October 26, 2017.

7.     Prior to Mr. Bielenda's testimony in the *Smith v. FCA* action, that Court held a hearing under Evidence Code section 402 to determine the admissibility of his testimony on November 7, 2017. Attached as **Exhibit E** are true and correct copies of the relevant excerpts from the Reporter's Transcript of Trial Proceedings in Smith v. FCA US LLC, November 7, 2017. From the outset, it became clear that most if not all of Mr. Bielenda's testimony attempted to relay the statements and actions of other persons within FCA US LLC concerning the TIPM defect, the contents of documents he had reviewed, and other assorted hearsay. For example, within the first few minutes of FCA's direct examination in Mr. Bielenda's 402 hearing, the following exchange took place:

"Q. BY MR. SHEPARDSON: Did you work on an investigation relating to fuel pump relays in Dodge Durangos and Jeep Grand Cherokees?

A. I did.

Q. What was your function in that investigation?

A. To help out where needed. **They** were doing testing, getting field returns back, taking them apart, analyzing them, working with the supplier, working with

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

the tier one to that supplier, anybody that supplied components to it, and, you know, obviously, being part of the team.

Q. Beyond the review of an investigation into fuel pump relays in Jeep Grand Cherokees and Dodge Durangos, have you personally worked on investigations or analysis of other TIPMs in other vehicles?

A. Yes. **I mean, we** --

Q. What?

A. **We did the TIPM investigation**. We -- obviously, **we looked at** the TIPM and all vehicles that it came in, looking at warranty, returns, looking at customer CAIRs, you know, doing complete analysis of that application in all vehicles."

Because of Mr. Bielenda's repeated tacit references to other people (viz, by continuous references to what "we" and "they" did or saw or found), that court limited Mr. Bielenda's testimony to his direct involvement, and subjects on which Mr. Bielenda was truly a percipient witness. (Exh. E at 993:21-997:19.)

8.    During Mr. Bielenda's Evidence Code section 402 hearing, it also became clear that most if not all of Mr. Bielenda's testimony consisted of prototypical "expert" opinions and conclusions drawn from his educational and work history and review of documents, and far exceeding the boundaries of "percipient" testimony. For example, when asked for his "percipient" knowledge about the TIPM, the following exchange took place:

"Q. Okay. Have you ever looked at the architecture of the TIPM 6?

A. Yes.

Q. Okay. And have you looked at documents describing the architecture of the TIPM 6?

A. Yes.

Q. And have you personally looked at documents describing the architecture of the TIPM 7?

A. Yes.

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

Q. Do you personally understand how each of the specific architectures of the TIPM 6 and TIPM 7 work?

A. Yes, I do.

Q. And how do you understand that?

A. **By reviewing all of the documents, by being part of -- I mean, you know, when I did engine controls and all of that, there's what we call a CAN communication bus. So all of the modules have to talk together. So we get involved with every module that's on the communication bus. We learn how they operate, what their architecture is, what type of interface we're going to have with them.**"

9.    On January 8, 2017, FCA noticed a "trial preservation" deposition of Mr. Bielenda, in which Mr. Shepardson conducted a videotaped direct examination. Mr. Bielenda was not produced or designated as an expert witness. Virtually every question was designed to elicit expert opinions and/or summarizations of other information. For example, Mr. Bielenda was asked, "[I]f TIPMs were being replaced as a result of some other cause besides high inductance and high heat for the fuel pump relay, would that have shown up somewhere on the data that you've talked about?" A true and correct copy of the Reporter's Transcript of Volume 1 of that deposition is attached hereto as **Exhibit F**. A true and correct copy of the Reporter's Transcript of Volume 2 of that deposition is attached hereto as **Exhibit G**.

10.    Following the "trial preservation" testimony on January 8, I proceeded to depose Mr. Bielenda. During the course of the deposition that day, Mr. Shepardson instructed Mr. Bielenda not to answer questions six times:

(a) "Q How did you prepare for your testimony today?

MR. SHEPARDSON: Objection. It calls for attorney-client privilege. Instruct him not to answer." (Exh. F at 142:14-18)

(b) "Q When I asked you how you prepared, Mr. Shepardson objected on the

grounds of attorney-client privilege. Did you speak with Mr. Shepardson in preparation for today's deposition?

MR. SHEPARDSON: Objection; calls for attorney-client privilege. Instruct him not to answer." (Exh. F at 142:22 – 143:5)

(c) "Q Where did you get the documents that you reviewed in preparation for today's deposition?

MR. SHEPARDSON: Objection; calls for attorney-client privilege. Instruct him not to answer." (Exh. F at 143:6-10)

(d) "Q Okay. Have you provided to Mr. Shepardson all of the written materials that you've reviewed that you base the conclusions on that you've testified about?

MR. SHEPARDSON: Objection; calls for attorney-client privilege. Instruct him not to answer." (Exh. F at 168:2-8)

(e) "Q Do you understand that when a person is testifying as a designated expert, they don't have attorney-client privilege with the -- with the attorney that designates them?

MR. SHEPARDSON: Objection; calls for a legal conclusion. He's not designated as an expert witness.

BY MR. HIGGINS: Q Has anybody ever informed you of that?

MR. SHEPARDSON: Objection; calls for attorney-client privilege. Instruct him not to answer." (Exh. F at 168:10-21)

(f) "Q If you testify in the trial or trials of any of these cases, do you have any idea what documents FCA may seek to introduce through your testimony?

MR. SHEPARDSON: Objection; calls for attorney-client privilege, calls for attorney work product. Instruct him not to answer." (Exh. F at 169:16-23.)

11.    The next day, the deposition continued and Mr. Bielenda was instructed not to answer several questions, including:

(a) "Q … Before we get into looking at additional specific e-mails, let me ask you a couple of general questions. Have you ever been copied on an e-mail

pertaining to a TIPM-7 investigation?

A Yes.

Q Did you produce the e-mails that you were copied on to the Velasco compilation?

A I don't believe so.

Q Were you asked to do so?

A I think they said that my e-mails were confidential.

Q Did you have an understanding of why they were confidential?

A I think they said it was --

MR. SHEPARDSON: Objection; calls for attorney-client privilege.

MR. HIGGINS: Are you instructing him not to answer?

MR. SHEPARDSON: Yes." (Exh. G at 285:5 – 24)

(b) "Q Have you ever authored an e-mail concerning the TIPM-7 defect investigation?

MR. SHEPARDSON: Objection; calls for attorney-client privilege. Instruct not to answer." (Exh. G at 287: 18-21)

(c) "Q Okay. Was any meeting ever held that included the participation of the vice president of engineering concerning the TIPM-7 investigation?

… THE DEPONENT: I guess -- I mean the meetings that I attended, I don't remember a vice president being inside those meetings. But that would be people that are present in the room. It's obviously done on a conference call, because we're tapping Conti in on the call. And other people call in. So I wouldn't know who was on the phone.

BY MR. HIGGINS: Q Did the office of general counsel participate in those meetings?

MR. SHEPARDSON: Objection; calls for attorney-client privilege. Instruct him not to answer." (Exh. G at 294: 5-22)

(d) "Q Did you ever yourself call a meeting concerning the TIPM-7

1   investigation?

2       A Yes.

3       Q Did you direct that minutes be kept?

4       A No. I was just presenting a paper I did.

5       Q When was that?

6       A So this goes to who I was presenting it to, which would mean --

7       MR. SHEPARDSON: We're about to get there. Go ahead if you where -- when

8   it was, was his question.

9       THE DEPONENT: If I looked at my presentation, it's got the date on the front

10  of it. I want to say sometime in '14.

11      MR. HIGGINS: Okay. And this is a privileged thing; is that right? There's

12  going to be an objection based on privilege?

13      MR. SHEPARDSON: I'm assuming that any question that would ask about

14  what the contents of the report were or to whom it was presented would be

15  privileged.

16      BY MR. HIGGINS: Q Let me just ask the questions. Who was present that you

17  presented that report to?

18      MR. SHEPARDSON: Objection; calls for attorney-client privilege." (Exh. G

19  at 418:24 – 419:25)

20      (e) "Q What was the contents of that report?

21      MR. SHEPARDSON: Objection; attorney-client privilege. Instruct him not to

22  answer.

23      BY MR. HIGGINS: Q What was the general subject of the report?

24      MR. SHEPARDSON: Objection; attorney-client privilege. Instruct him not to

25  answer." (Exh. G at 420: 7-13)

26      (f) "Q Did anybody who's not an attorney direct you to take any further actions

27  following that presentation?

28      MR. SHEPARDSON: Objection; calls for attorney-client privilege, attorney

---

7

PLAINTIFFS' MIL TO EXCLUDE TESTIMONY OF JAMES BIELENDA

1  work product. Instruct him not to answer.

2     Q Did you take any actions following the presentation of that report?

3     MR. SHEPARDSON: Objection; calls for attorney work product, calls for

4  attorney-client privilege. Instruct him not to answer." (Exh. G at 420:19 – 421:6)

5     12.     Plaintiffs will suffer an undue prejudice if this motion is not granted

6  since Plaintiffs have prepared this case assuming that evidence and testimony in

7  the form of an expert opinion by a witness who has not been designated would not

8  be introduced.

9     I declare under penalty of perjury under the laws of the State of California

10  that the foregoing is true and correct.

11  Executed <u>3rd day of April</u> , in Los Angeles, California.

13

14                              /s/ Russell Higgins
                                Russell Higgins

1
2
3
4
5
6
7
8
9    **UNITED STATES DISTRICT COURT**
10    **CENTRAL DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| GLORIA LAWRENCE | Case No.: 2:16-cv-05452-MRW |
| Plaintiffs, | **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION *IN LIMINE* TO PROHIBIT ANY EVIDENCE IN THE FORM OF AN EXPERT OPINION BY A WITNESS WHO HAS NOT BEEN DESIGNATED** |
| vs. | |
| FCA US LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive, | *Assigned for All Purposes to the Honorable Magistrate Judge Michael R. Wilner* |
| Defendant. | Hearing Date: April 25, 2018 |
| | Action Filed: September 26, 2016 |

Having considered the in limine motion filed by GLORIA LAWRENCE ("Plaintiffs") to exclude any testimony in the form of an expert opinion by an expert who has not been so designated, IT IS HEREBY ORDERED that the motion is GRANTED.

Testimony of James Bielenda shall be excluded from evidence.

Defendant and its counsel shall further advise all witnesses that:

1.    Defendant, its attorneys, and witnesses are prohibited from introducing or attempting to introduce, either directly or indirectly, any testimony in the form of an expert opinion by an expert who has not been designated.

2.    Defendant and its witnesses shall refrain from mentioning or referring to evidence of the type described above in the presence or hearing of jurors or prospective jurors; and

3.    Defendant's attorneys shall immediately inform FCA and its witnesses of the terms and effect of the Court's order, shall caution each of the Defendant's witnesses to strictly follow the same, and shall not make any reference to the fact that this motion has been filed.


Dated: _____          _____

                                              Judge Michael R. Wilner


Prepared by:
**KNIGHT LAW GROUP, LLP**
Steve Mikhov (SBN 224676)
Russell Higgins (SBN 226124)
*1801 Century Park East, Suite 2300*
*Los Angeles, California 90067*
Telephone: (310) 286-0275
Facsimile: (310) 286-0274

Attorneys for Plaintiffs,
GLORIA LAWRENCE